IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KIMBERLEE D. HAMILTON, | ) | 4:05CV3246 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

INTRODUCTION

The Social Security Administration denied plaintiff's application for disability benefits and supplemental security income benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* ("Act"). After a hearing, an administrative law judge ("ALJ") determined on March 22, 2005, that plaintiff is not disabled under the Act. The Appeals Council denied plaintiff's request for review on August 1, 2005. Plaintiff now seeks judicial review of the ALJ's determination, as it represents the final decision of the defendant, Jo Anne Barnhart, the Commissioner of the Social Security Administration.

Plaintiff claims that the ALJ's decision is incorrect for several reasons: 1) the ALJ erred by not fairly portraying evidence in the record and by not accepting as true plaintiff's statements regarding the severity of her symptoms; 2) the ALJ erred in excluding the opinion of a treating psychiatrist; 3) the ALJ erred in determining that plaintiff could sustain employment; and 4) the ALJ erred in not considering the reasons for plaintiff's alcohol abuse. The court has reviewed the record, the ALJ's evaluation and findings, the parties' briefs, the transcript ("Tr."), and the applicable law, and finds that the ALJ's ruling that

plaintiff is not disabled pursuant to the Social Security Act is supported by substantial evidence in the record.

## BACKGROUND

Plaintiff testified that, as of the date of the hearing on January 11, 2005, she was forty-nine years old and had completed high school and a semester to a year of college. Tr. at 671, 672.  Her testimony indicated a history of alcohol abuse.  Tr. at 675, 676, 677, 679, 680, 681, 684.  Plaintiff alleges that she is disabled because she suffers from seizures, anxiety, and depression.  Tr. at 681, 685.

The record includes a number of Emergency Department Encounter Forms, beginning with one from October 16, 2000.  Tr. at 179.  Plaintiff reported that she had tripped, fallen, and struck her head against a curb that morning; she did not lose consciousness but did suffer a laceration to the head.  Tr. at 179.  The treating physician, Dr. Peter Davidson, indicated that plaintiff had apparently been drinking heavily the night before.  *Id.*

Subsequently, plaintiff presented to the emergency room on April 6, 2001, concerned that her liver might not be functioning properly, noting her history of Hepatitis C and alcoholism and stating that she had drunk a pint of vodka the previous night and each day for the past week.  Tr. at 181.  The treating physician, Dr. John Hansen, diagnosed plaintiff with alcohol abuse and discharged her in stable mental and physical condition.  Tr. at 182.

On January 1, 2002, plaintiff presented to the emergency room, stating that she had been intoxicated persistently for the previous three weeks; the psychiatric unit at BryanLGH Medical Center West admitted her.  Tr. 197, 193.  She was discharged on January 21,

2

2002.  Tr. at 206.  Her primary diagnosis was alcohol withdrawal, and her secondary diagnosis included alcohol intoxication; alcohol dependence; major depressive disorder, recurrent and severe; and generalized anxiety disorder.  *Id.*

Treating physician Dr. Lewiston Birkmann of Neurology Associates, P.C., reported that on February 12, 2002, plaintiff suffered from a generalized seizure that began with jerks in her right foot and then developed into a stiff right lower extremity and a turning in of her foot.  Tr. at 227.  This led to a generalized event during which she bit her cheek and her tongue.  *Id.*  Dr. Birkmann indicated that the event occurred approximately two and a half to three weeks after alcohol had been discontinued.  Tr. at 227.  Stating that the "timing for alcohol withdrawal [was] not that good," Dr. Birkmann indicated that plaintiff might have a new onset primary seizure disorder.  Tr. at 228.

The record contains additional reports of plaintiff's medical treatments, including discharge diagnoses from BryanLGH Medical Center West on April 29, 2002, of alcohol withdrawal; alcohol intoxication; alcohol dependence; major depressive disorder recurrent, moderate; generalized anxiety disorder; dependent personality traits; and seizure disorder, among others.  Tr. at 235.  Plaintiff was also discharged with final diagnoses of seizures and alcohol withdrawal on October 5, 2002, after presenting to the emergency room.  Tr. at 375.  On April 21, 2003, plaintiff presented to the emergency room and was discharged with diagnoses of alcohol intoxication and pseudoseizure after she stated she was going to have a seizure, but the event did not appear to be a seizure to the treating physician, Dr. James Fosnaugh.  Tr. at 472.  Lancaster County Crisis Center discharged plaintiff on July 25, 2003, with a diagnostic impression including alcohol dependence and seizure disorder. Tr. at 436.

Susan Tatum, clinical specialist at Centerpointe, Inc., which provided treatment services to plaintiff for her problems with alcohol, observed on May 23, 2003, that plaintiff "had relapsed in April and experienced seizures again after sobering up." Tr. at 530. Ms. Tatum further indicated on November 25, 2003, that plaintiff experienced seizures after discontinuing the medication Topamax. Tr. at 599. Dr. Dianna Clyne, treating psychiatrist, also assessed plaintiff on a number of occasions and noted on October 16, 2003, that plaintiff suffered from generalized anxiety disorder, depression, and seizure disorder, among other ailments. Tr. at 502. A hospital discharge summary for plaintiff dated September 27, 2004, stated that plaintiff underwent delirium tremens requiring restraint; plaintiff's final diagnoses on that date included seizure, alcoholism, alcohol withdrawal, and major depression. Tr. at 651.

## LEGAL STANDARD

When reviewing the decision not to award Social Security Disability benefits and Supplemental Security Income benefits, the district court does not act as a fact-finder or substitute its judgment for the judgment of the ALJ or the Commissioner. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995). Rather, the district court will affirm the Commissioner's decision to deny benefits if it is supported by substantial evidence in the record as a whole. *Eback v. Chater*, 94 F.3d 410, 411 (8th Cir. 1996). "Substantial evidence is that which a reasonable mind would find as adequate to support the ALJ's decision." *Brown v. Chater*, 87 F.3d 963, 964 (8th Cir. 1996) (*citing Baumgarten v. Chater*, 75 F.3d 366, 368 (8th Cir. 1996)). In determining whether the evidence in the record is substantial, the court must consider "evidence that detracts from the [Commissioner's] decision as well as evidence that supports it." *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999) (*citing Woolf v.*

4

*Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)).  If the record contains substantial evidence supporting the Commissioner's decision, the court may not reverse the decision either "because substantial evidence exists in the record that would have supported a contrary outcome . . . or because [the court] would have decided the case differently."  *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citations omitted).  The court may, however, "reverse the administrative determination on the ground of unreasonableness."  *Bradley v. Bowen*, 660 F. Supp. 276, 279 (W.D. Ark. 1987) (*citing Gavin v. Heckler*, 811 F.2d 1195, 1199-1201 (8th Cir. 1987); *Deuter v. Schweiker*, 568 F. Supp. 1414 (N.D. Ill. 1983)).

## ALJ'S DECISION

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423 (d)(1)(A); 20 C.F.R. § 404.1505 (a).  A claimant is considered to be disabled when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in [significant numbers in] the national economy. . . ."  42 U.S.C. § 432 (d)(2)(A).

The ALJ noted the steps the Social Security Administration follows, in accordance with 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920, to determine whether a claimant is disabled.  Tr. at 16.  These steps consist of a review of "any current work activity, the severity of any medically determinable impairment(s), and the individual's residual functional capacity with regard to his or her ability to perform past relevant work or other work that exists in the regional and national economies."  *Id.*

The ALJ determined that plaintiff was "disabled" as the term is defined under the Act, but that plaintiff had a substance use disorder, which had been a "contributing factor material to the finding of disability." *Id.* The ALJ found that because plaintiff's alcoholism was material to the determination of her disability, she could not be considered disabled pursuant to Public Law 104-121, 20 C.F.R. § 404.1535 and 20 C.F.R. § 416.935. Tr. at 29.

The ALJ observed, in accordance with the first step in the evaluation process, that plaintiff has not performed substantial and gainful work activity since April 30, 2002, plaintiff's alleged date of onset of disability. Tr. at 16. The ALJ further observed that the medical evidence in the record demonstrated plaintiff's long alcohol abuse history. *Id.* In accordance with the second step of the evaluation process, the ALJ determined that the evidence demonstrated that at relevant times, plaintiff's "medically determinable impairments (i.e., alcoholism, depression and seizure disorder) have constituted 'severe' impairments as defined in the Regulations." Tr. at 24.

Based upon the total evidence, the ALJ found plaintiff's alcoholism material to a disability finding. *Id.* The ALJ noted that in the context of an evaluation of a substance use disorder, the use of the term "material" indicates that an individual would not be found disabled if he or she stopped using alcohol and/or drugs based on the individual's other impairments. *Id.* The ALJ observed that since at least the alleged onset date of disability, the medical evidence showed that plaintiff had not maintained sobriety for more than brief periods, and that the record did not support plaintiff's allegation of an eight-month period of sobriety since the alleged onset date. Tr. at 25.

The ALJ found that "[w]ith regard to her functioning with alcohol abuse . . . [plaintiff] had moderate restriction of activities of daily living; marked difficulties in maintaining social

6

functioning; marked difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation of extended duration." *Id.* The ALJ found further that plaintiff's "other impairments (i.e., depression and seizure disorder), either singly or collectively, have not constituted a disability." *Id.* The ALJ noted that the evidence demonstrated that when plaintiff did not use alcohol, she was generally assessed as doing well. *Id.* In support of this, the ALJ observed that Dr. Walter J. Duffy, one of plaintiff's treating psychiatrists, reported that plaintiff could maintain concentration and memory, interact well socially, and understand instructions–though she had difficulty adapting to environmental changes–when taking her medications as prescribed and not drinking. *Id.* The ALJ further determined that his findings were supported by the treatment notes of Dr. Dianna Clyne, plaintiff's treating psychiatrist at the time. *Id.* On treatment dates ranging from January 23, 2003, to December 9, 2004, Dr. Clyne had noted that when sober, plaintiff generally had a euthymic mood and appropriate affect. *Id.* The ALJ also observed that Dr. Scott Heasty, treating physician, determined on October 4, 2002, that plaintiff's abuse of alcohol constituted "'a very big problem for her' and that she 'has never been able to stay sober longer than one month.'" *Id.*

The ALJ also observed that the record demonstrates that plaintiff's alcohol abuse had a significant impact on her seizure disorder, and that plaintiff had quit taking her prescribed medications, including Tegretol, when she resumed drinking. Tr. at 26.

The ALJ noted that Dr. Clyne's September 16, 2004, report made no mention of plaintiff's alcohol abuse and made reference only to anxiety and depression as having an impact on plaintiff's functional abilities. *Id.* The ALJ found this report inconsistent with other evidence, including Dr. Clyne's own progress reports. *Id.* The ALJ gave little weight to Dr.

7

Clyne's October 14, 2004, report, which also did not mention any impact of plaintiff's ongoing alcohol problem on her functioning. *Id.* The ALJ observed that Dr. Clyne's statement regarding plaintiff's eight-month period of sobriety–during which she could not maintain gainful employment–is not substantiated by the evidence. *Id.* The ALJ further observed that Dr. Clyne's report conflicted with her progress report from the same date, in which she "noted a normal mental status examination" with a euthymic mood and appropriate affect. *Id.*

Additionally, the ALJ observed that plaintiff's statements that she could not work due to her fear of meeting people and that she could not handle the side effects from her medication were not supported by the record. *Id.* The ALJ also noted that plaintiff's allegation that she is unable to take buses conflicts with plaintiff's mother's statement that plaintiff takes the bus to get to meetings. *Id.*

The ALJ determined that plaintiff's statements referencing her functional abilities indicate a greater residual functional capacity than that alleged by plaintiff. *Id.* Plaintiff's reported activities included cooking, household chores, running her own errands, shopping, playing cards, reading, taking walks, visiting her parents, and attending AA meetings. *Id.*

Regarding plaintiff's work history, the ALJ noted that although the evidence indicated that she had a fairly good work record throughout much of her work history, an individual's work record is not the determinative factor for judging credibility; such a record is useful in determining only whether someone is motivated to work. Tr. at 27. The ALJ observed that plaintiff appeared not fully motivated to work. *Id.* In support of this, the ALJ noted that on November 25, 2002, Susan Tatum, a treating clinical specialist with CenterPointe treatment center, reported that plaintiff had decided not to pursue any goal

related to her identified vocational interests until she decided whether to appeal her Supplemental Security Income (SSI) decision.  *Id.*  The ALJ also noted that Dr. Klaus Hartmann, a treating physician, similarly reported on July 23, 2003, that plaintiff considered getting a part-time job but was unsure whether she should work as she had applied for Social Security Disability Insurance (SSDI).  *Id.*  The ALJ found that without alcohol use, plaintiff would have "mild restriction of activities of daily living; no difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation of extended duration."  *Id.*  The ALJ thus found plaintiff's testimony regarding disabling impairments independent of alcohol abuse not credible.  *Id.*

With regard to plaintiff's impairments independent of alcohol abuse, the ALJ made findings as to the residual functional capacity she would possess:

> she would need to have seizure precautions of not working on ladders, ropes or scaffolds or with dangerous equipment; and she has no other physical restrictions.   From a mental standpoint, [plaintiff] would be limited to performing unskilled, routine and repetitive work due to her stated difficulty maintaining attention and concentration for extended periods of time; she would have difficulty in jobs where she would be required to set goals or deal with frequent changes; when sober, she does not have any particular problem with social interaction; she could perform jobs with low mental exertion . . . and she would need a job that does not involve more than occasional or superficial contact with the general public, and that does not involve frequent or constant interaction with co-workers or supervisors.

*Id.*  The ALJ found that based on information in the record and on plaintiff's statements, plaintiff's past relevant work–which the vocational expert described as in the semi-skilled to skilled range, and involving sedentary to medium levels of exertion–involved abilities that were beyond those discussed in the residual functional capacity assessment.  *Id.*

The ALJ stated that because of plaintiff's medically determinable impairments, she could no longer perform her "past relevant work as a general clerk, claims clerk, receptionist, insurance clerk and office manager."  Tr. at 27.  This inability apparently stemmed from the physical restrictions determined by the ALJ, as well as plaintiff's mental limitations and need for unskilled, routine, and repetitive work.  *Id.*  The burden therefore shifted to the Commissioner of Social Security to show that there were other types of work the plaintiff could perform given her residual functional capacity, her age, education, and work experience.  *Id.*  The ALJ noted that Michael McKeeman, the consulting vocational expert under contract with the Office of Hearings and Appeals of the Social Security Administration, listed a number of types of work activity that would come within plaintiff's functional capacity.  *Id.*  The ALJ noted that the vocational expert's testimony indicated that the occupations listed existed in significant numbers in the regional economy.  *Id.*

DISCUSSION

## A.  Alcohol Abuse As Contributing Factor Material to Disability Finding

The Eighth Circuit has stated that

> [u]nder 1996 amendments to the Social Security Act, if alcohol or drug abuse is a "contributing factor material to the Commissioner's determination" of a disability, the claimant is not entitled to benefits.  42 U.S.C. § 423(d)(2)(C).  In the determination whether the substance abuse is "material," the claimant has the burden of demonstrating that she would still be disabled if she were to stop using drugs or alcohol.

*Vester v. Barnhart*, 416 F.3d 886, 888 (8th Cir. 2005) (*citing* 20 C.F.R. § 416.935(b)(1);

*Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000)).  The ALJ determined that the total evidence supported a finding that plaintiff had been disabled pursuant to the Social

Security Act, but found her substance abuse disorder a contributing factor material to the finding of disability.  Tr. at 16.

The court concludes that the ALJ properly determined that plaintiff is disabled and that her alcohol abuse is a contributing factor material to that disability.  Further, the court concludes that plaintiff did not demonstrate that she would be disabled were she to cease abusing alcohol.  Therefore, the court concludes that plaintiff is not entitled to benefits.

### B.  Assessment of Credibility:  Portrayal of Evidence and Acceptance of Claimant's Statements Regarding Severity of Her Symptoms

In her argument regarding assessment of credibility, plaintiff contends that to be supported by substantial evidence, the ALJ's decision must include accurately portrayed references to the record.  Filing No. 22, Plaintiff's Brief at 5.  Although the ALJ is required to develop the record fully and fairly, there is no requirement that the ALJ discuss each piece of evidence submitted.  *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998).  The fact that the ALJ has not cited specific evidence does not indicate that the evidence was not considered.  *Id.* (*citing Montgomery v. Chater*, 69 F.3d 273, 275 (8th Cir. 1995)).

Further, plaintiff argues that her statements as to the severity of her symptoms must be accepted unless contradicted by evidence in the record.  Filing No. 22, Plaintiff's Brief at 29.  The standard in the Eighth Circuit for evaluating a claimant's subjective complaints in Social Security cases is set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984).  According to the Eighth Circuit, an ALJ may not disregard a plaintiff's subjective complaints solely because the objective medical evidence does not fully support them:

> The absence of an objective medical basis which supports the degree of severity of [disability claimant's] subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints.  The [ALJ] must give full consideration to all of the evidence presented relating to subjective complaints, including the [plaintiff's] prior

11

work record, and observations by third parties and treating and examining physicians relating to such matters as:

1. the [plaintiff's] daily activities;
2. the duration, frequency and intensity of the pain;
3. precipitating and aggravating factors;
4. dosage, effectiveness and side effects of medication;
5. functional restrictions.

The [ALJ] is not free to accept or reject the [plaintiff's] subjective complaints solely on the basis of personal observations.  Subjective complaints may be discounted if there are inconsistencies in the record as a whole.

*Polaski*, 739 F.2d at 1322.

Further, the Eighth Circuit has stated that "[w]hile the ALJ may not discount [a social security disability complainant's] complaints solely because they are not fully supported by objective medical evidence, [a complainant's] complaints may be discounted based on the inconsistencies in the record as a whole."  *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005) (*citing Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000)).

The court concludes that plaintiff's subjective allegations of her physical and mental conditions are inconsistent with her medical history, her past work experience, and the nature of her disorder, as reflected in the record as a whole.  Plaintiff's contentions that her proper use of her seizure medication or her alcohol use did not affect her seizures did not comport with the evidence in the record.  Following one emergency room visit, the treating physician, Dr. Scott Heasty, noted that plaintiff said that she had not had seizures while taking Tegretol or while drinking.  Tr. at 377.

The court concludes that the ALJ properly found the extent of plaintiff's complaints not credible by considering inconsistencies between plaintiff's subjective complaints and the objective medical evidence, combined with plaintiff's daily activities, medical treatment and medication.  The ALJ observed specifically that plaintiff's activities indicated a greater

12

residual functional capacity than she alleged.  Tr. at 26.  After carefully reviewing the evidence, the court determines that the ALJ's assessment of plaintiff's credibility is supported by substantial evidence from the record.

## C.  Weight Afforded to Treating Psychiatrist's Diagnosis

Plaintiff contends the ALJ erred in not giving significant weight to Dr. Clyne's reports from September 16, 2004, and October 14, 2004.  Filing No. 22, Plaintiff's Brief at 33.  It is the responsibility of the ALJ to determine plaintiff's residual functional capacity based on all of the relevant evidence.  20 C.F.R. §§ 404.1545 and 416.945.  Here, the court determines that the ALJ properly considered all relevant medical evidence from the record. The ALJ did not give significant weight to Dr. Clyne's September 16, 2004, report because it made no mention of plaintiff's alcohol abuse, referring only to anxiety and depression as having an impact on plaintiff's functional abilities.  Tr. at 26.  Additionally, the ALJ did not give significant weight to Dr. Clyne's October 14, 2004, report because it also made no mention of any impact plaintiff's alcohol problem had on her functioning, and because of Dr. Clyne's statement, contrary to the evidence, that plaintiff had extended periods of sobriety of at least eight months, during which plaintiff could not maintain gainful employment.  *Id.*  It would be different if Dr. Clyne opined that plaintiff's ailments were separate and apart from her alcoholism. However, there is no such evidence presented by Dr. Clyne.

Similarly, treating physician Dr. Lewiston Birkmann made a comment on February 12, 2002, with regard to plaintiff's initial seizure that the "timing for alcohol withdrawal [was] not that good."  Tr. at 228.  However, this was a one-time comment that does not constitute evidence to support a diagnosis of ailments separate from plaintiff's alcoholism.

13

The ALJ adopted the opinions of other treating physicians, including Dr. Heasty, who on October 4, 2004, reported that plaintiff had a very big problem with alcohol and that she had been unable to remain sober for more than one month, and Dr. Hartmann, who on July 23, 2003 reported that plaintiff suffered from impaired judgment when drinking. Tr. at 25-26. "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians . . . . The ALJ may reject the conclusions of any medical expert, whether hired by the Claimant or the government, if they are inconsistent with the record as a whole." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) (citations omitted).

The court concludes that the ALJ properly considered all relevant medical evidence of the record. Upon review of the record, it is evident that plaintiff's alcohol abuse significantly affected her seizure disorder. The evidence indicates that plaintiff's seizures resulted from alcohol withdrawal and a lack of her prescribed medication. According to Dr. Heasty's report on October 4, 2002, following plaintiff's presentation to the emergency room, plaintiff "states that she has never had a seizure while drinking or taking her Tegretol. Her seizures have only come prior to Tegretol administration, as well as not taking her Tegretol and stopping her alcohol consumption." Tr. at 377. Dr. Heasty's report is in accord with the ALJ's observation that "essentially all of [plaintiff's] hospitalizations have been in connection with substance abuse and secondary withdrawal symptoms." Tr. at 25. The ALJ properly reviewed and considered plaintiff's medical evidence on record, and the ALJ's decision regarding the weight afforded to a treating psychiatrist's opinion is supported by substantial evidence on the record.

## D.  Plaintiff's Ability to Sustain Employment

14

Plaintiff contends that to be found not disabled, a claimant must be able to sustain employment, beyond the ability to work on isolated days. Filing No. 22, Plaintiff's Brief at 37. Plaintiff argues that, for example, Dr. Walter J. Duffy's comments that plaintiff could "sustain concentration, interact well socially with others, [and] remember things, is contradicted" upon a review of plaintiff's discharge summary, which includes Dr. Duffy's statement that "'Kim reported racing thoughts, high anxiety, and mild depression throughout her treatment stay.'" Filing No. 22, Plaintiff's Brief at 39 (*citing* Tr. at 522). Plaintiff further asserts that the record does not indicate that Dr. Duffy observed plaintiff when she was in a "structured environment," and that Dr. Duffy did not indicate what he meant when he determined plaintiff to be "stable on her medication." Filing No. 22, Plaintiff's Brief at 40. Plaintiff suggests that the treating physician's assessment that plaintiff was well or stable "does not translate into 'can work.'" Filing No. 22, Plaintiff's Brief at 40.

According to the relevant regulations regarding the residual functional capacity of a claimant, "[y]our impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is the most you can still do despite your limitations. We will assess your residual functional capacity based on all the relevant evidence in your case record." 20 C.F.R. § 404.1545(a).

According to the Eighth Circuit, acts that are not consistent with a claimant's disability claim negatively reflect on the claimant's credibility. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001). Further, the Eighth Circuit noted that a claimant's ability to "carry on a normal life contributes to the finding that his impediments were not disabling."

15

*Id.* at 1149.  In this case, the ALJ observed plaintiff's routine performance of household chores and errands and noted that plaintiff's statements about her functional capabilities suggest a greater residual functional capacity than she alleged.  Tr. at 26.  The ALJ further observed that plaintiff's assertion that she cannot take a bus because of her fear of meeting people conflicts with her mother's statement that plaintiff takes the bus for meetings.  *Id.*  The court concludes that the ALJ properly considered discrepancies between evidence from the record and plaintiff's alleged impairments that might affect her ability to work.

With regard to residual functional capacity, the Eighth Circuit has consistently held that

> the test of whether a person can perform light work is whether a complainant can perform this work on a sustained, continuing day-in, day-out basis.  The residual functional capacity of a claimant "is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.

*Weber v. Barnhart*, 348 F.3d 723, 725 (8th Cir. 2003) (*citing McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982)).

Following the ALJ's observation that plaintiff's statements with regard to her functional capabilities indicate that she had a greater capacity than alleged, the ALJ noted that due to her medically determinable impairments–including seizures, anxiety, and depression–plaintiff could no longer perform her past relevant work, including work as a "general clerk, claims clerk, receptionist, insurance clerk and office manager."  Tr. at 27.  The ALJ noted that plaintiff's impairments, including depression and seizure disorder, did not constitute a disability when considered independently from plaintiff's alcohol abuse.  Tr. at 25.  The court concludes that the ALJ properly determined that the burden shifted

16

to the Commissioner of Social Security to present other types of work plaintiff could perform given her residual functional capacity, age, education, and work experience. *See Kerns v. Apfel*, 160 F.3d 464, 466 (8th Cir. 1998).

The Eighth Circuit has stated that once the burden has shifted to the Commissioner, if the claimant's impairments are exertional, the Commissioner can carry the burden by referencing the medical-vocational guidelines, which are fact-based generalizations about job availability. *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) (citation omitted). However, vocational expert testimony is a requirement if the claimant has nonexertional impairments. *Id.* The Eighth Circuit has further noted that pain and mental incapacity are among those impairments considered non-exertional. *Gray v. Apfel*, 192 F.3d 799, 802 (8th Cir. 1999).

In the instant case, Michael McKeeman, a vocational expert under contract with the Office of Hearings and Appeals of the Social Security Administration, testified at the hearing. Tr. at 28. Mr. McKeeman assessed plaintiff's residual functional capacity and listed several unskilled occupations that, if sober, she could fill and that were available in significant numbers in the regional economy, such as office clerk jobs, bookkeeping positions, work in word processing, kitchen work, and janitorial positions. *Id.* Due to plaintiff's complaints of anxiety and depression, the court concludes that the ALJ properly relied on the presented testimony of a vocational expert regarding these nonexertional impairments, and that in doing so, the Commissioner met its burden of establishing that plaintiff maintained the residual functional capacity to perform other work.

The ALJ asked Mr. McKeeman about plaintiff's ability to do work activities, noting that she would need seizure precautions and would be capable only of unskilled, routine

work. Tr. at 698. In framing his hypothetical question, the ALJ noted further that plaintiff would have difficulty with jobs requiring goal-setting, frequent changes, or much contact with the general public. *Id.* Additionally, the ALJ stated that Mr. McKeeman should assume the plaintiff was sober. *Id.* Mr. McKeeman replied that under the ALJ's hypothetical there would be many jobs in Nebraska "in the unskilled categories ranging from . . . sedentary to light" that would be appropriate for plaintiff. *Id.* Mr. McKeeman confirmed that many of the office positions that plaintiff could perform would be similar to the type of jobs she had held in the past, but at a lower skill level.

The ALJ posed a second hypothetical question, asking Mr. McKeeman whether–if plaintiff's testimony was considered credible–she could perform unskilled office work, kitchen work, janitorial work, or laundry work. Tr. at 700. Mr. McKeeman replied that pursuant to that hypothetical, claimant could not perform those types of jobs, citing the difficulty she claimed with anxiety, constant fear, and problems with eating. *Id.*

The Eighth Circuit has stated that "'[a] hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true.'" *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005) (citations omitted). The court concludes that the ALJ's hypothetical questions were proper because they included limitations supported by the record as a whole, including her difficulties with social anxiety and maintaining concentration. Therefore, the court finds the ALJ's hypotheticals proper. The Eighth Circuit has further stated that the testimony of a vocational expert "'based on a properly phrased hypothetical question constitutes substantial evidence.'" *Id.* (citation omitted). The court therefore concludes that the ALJ's decision, supported by substantial evidence, should not be disturbed.

18

**E.  Consideration of Plaintiff's Stated Reasons for Continuing to Drink**

Plaintiff argues that

[t]he ALJ cannot just say that the claimant's drinking is keeping her from work if you don't first look at why she drinks.  One of the criteria in assessing the severity is to look for periods of decompensation.  In fact, the regulations require that there be three or more periods of decompensation to be a marked impairment in this area.

Filing No. 22, Plaintiff's Brief at 41. Plaintiff argues that the evidence in the record supports her statements concerning alcohol use as self-medication.  *Id.*  The court concludes that plaintiff's contention that she used alcohol for purposes of self-medication is not relevant to a determination of whether she can work or whether she is disabled.  Rather, a relevant inquiry is whether plaintiff's seizures that occurred while she was sober were treatable with appropriate medication adjustments.  An impairment cannot be considered disabling if it is controllable by treatment or medication.  *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004).  In this case, the record indicates that medication does have a positive impact on plaintiff's impairment.  Dr. Scott Heasty's October 4, 2002, report, for example, states that plaintiff did not have seizures while taking her medication or while drinking, suggesting that the seizures resulted from alcohol withdrawal.  Tr. at 377.  The court concludes that substantial evidence supports the finding that plaintiff's impairments can be controlled by medication.  The effect of plaintiff's medication, when coupled with the court's determination that plaintiff's alcohol abuse is a contributing factor material to her disability, supports the court's conclusion that plaintiff is not entitled to benefits.

19

CONCLUSION

Accordingly, the court concludes that the ALJ's finding that plaintiff is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record as a whole.  The defendant's decision is affirmed.

IT IS, THEREFORE, ORDERED that the final decision of the defendant, Jo Anne B. Barnhart, the Commissioner of the Social Security Administration, is affirmed.

Dated this 1st day of December, 2006.

BY THE COURT:


s/ Joseph F. Bataillon
Chief United States District Judge